IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHARON PHILLIPS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) CIVIL NO. 07-833-GPM ) |
| HOWMEDICA OSTEONICS CORPORATION and ANDERSON HOSPITAL, | ) ) ) ) |
| Defendants. | ) ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

## I. INTRODUCTION

This matter is before the Court on preliminary review of the allegations of federal subject matter jurisdiction asserted in the notice of removal filed by Defendant Howmedica Osteonics Corporation ("Howmedica"). *See Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir. 1986) ("The first thing a federal judge should do when a complaint is filed is check to see that federal jurisdiction is properly alleged."); *Board of Educ. of Decatur Sch. Dist. No. 61 v. Rainbow/Push Coal.*, 75 F. Supp. 2d 916, 918 (C.D. Ill. 1999) (citing *Wisconsin Knife Works*, 781 F.2d at 1282) (reviewing a notice of removal sua sponte and holding that the court lacked federal subject matter jurisdiction); *Waymar Med., Inc. v. American Med. Elecs., Inc.*, 786 F. Supp. 754, 755 (E.D. Wis. 1992) (same). *See also Hay v. Indiana State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 (7th Cir. 2002) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999)) ("Jurisdiction is the 'power to declare law,' and without it the federal courts cannot proceed. Accordingly, not only may the federal courts police subject matter jurisdiction *sua sponte*, they

must."); *Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774, 778 (7th Cir. 1994) (noting that a federal court "has an independent duty to satisfy itself that it has subject-matter jurisdiction"); *Kurz v. Fidelity Mgmt. & Research Co.*, No. 07-cv-592-JPG, 2007 WL 2746612, at *1 (S.D. Ill. Sept. 18, 2007) ("The limited nature of federal subject matter jurisdiction imposes on federal courts a duty to examine their jurisdiction at every stage of a proceeding, sua sponte if need be."); *Kuntz v. Illinois Cent. R.R. Co.*, 469 F. Supp. 2d 586, 588 (S.D. Ill. 2007) ("Because a federal court's jurisdiction is limited, it has a . . . nondelegable duty to police the limits of federal jurisdiction with meticulous care.").

This action was filed originally in the Circuit Court of the Third Judicial Circuit, Madison County, Illinois, on October 17, 2007. The complaint in this case alleges that Plaintiff Sharon Phillips suffered personal injuries as a result of a defective hip replacement device that was surgically implanted in her body in September 2003. Phillips asserts claims for breach of implied warranty, strict products liability, and negligence against Howmedica, the manufacturer of the hip replacement device. Additionally, Phillips asserts a claim in strict products liability against Defendant Anderson Hospital ("Anderson"), where Phillips underwent the operation in which the defective hip replacement device was implanted in her body. On November 29, 2007, Howmedica removed the case from state court to this Court, asserting federal subject matter jurisdiction on the basis of diversity of citizenship. Having reviewed carefully the jurisdictional allegations contained in Howmedica's notice of removal, the Court concludes that federal subject matter jurisdiction does not exist in this case. Accordingly, the case will be remanded to state court.

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The party seeking removal has the burden of establishing federal jurisdiction. *See Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 540 (7th Cir. 2006); *Vogel v. Merck & Co.*, 476 F. Supp. 2d 996, 998 (S.D. Ill. 2007); *Fuller v. BNSF Ry. Co.*, 472 F. Supp. 2d 1088, 1091 (S.D. Ill. 2007). "'Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum.' Put another way, there is a strong presumption in favor of remand." *Potter v. Janus Inv. Fund*, 483 F. Supp. 2d 692, 695 (S.D. Ill. 2007) (quoting *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)) (internal citation omitted). "All doubts about the propriety of removal are to be resolved in favor of remand." *Disher v. Citigroup Global Mkts., Inc.*, 487 F. Supp. 2d 1009, 1014 (S.D. Ill. 2007). *See also Alsup v. 3-Day Blinds, Inc.*, 435 F. Supp. 2d 838, 841 (S.D. Ill. 2006) ("Doubts concerning removal must be resolved in favor of remand to the state court."); *Littleton v. Shelter Ins. Co.*, No. 99-912-GPM, 2000 WL 356408, at *1 (S.D. Ill. Mar. 9, 2000) ("The removal statute, 28 U.S.C. § 1441, is construed narrowly, and doubts concerning removal are resolved in favor of remand.").

Removal based on federal diversity jurisdiction requires, of course, that the parties to a case be of completely diverse state citizenship, that is, no plaintiff may be a citizen of the same state as any defendant, and that the amount in controversy exceed $75,000, exclusive of interest and

costs. *See* 28 U.S.C. § 1332(a)(1); *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990); *Rubel v. Pfizer Inc.*, 361 F.3d 1016, 1017 (7th Cir. 2004); *Lyerla v. Amco Ins. Co.*, 461 F. Supp. 2d 834, 835 (S.D. Ill. 2006). However, even where diversity of citizenship is not complete, a federal court may disregard the citizenship of a diversity-defeating defendant on removal when that defendant has been fraudulently joined, that is, "there is no possibility that a plaintiff can state a cause of action against [the] nondiverse defendant[ ] in state court, or where there has been outright fraud in [the] plaintiff's pleading of jurisdictional facts." *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993). *See also Hoosier Energy Rural Elec. Coop., Inc. v. Amoco Tax Leasing IV Corp.*, 34 F.3d 1310, 1315 (7th Cir. 1994); *Hauck v. ConocoPhillips Co.*, Civil No. 06-135-GPM, 2006 WL 1596826, at *2 (S.D. Ill. June 6, 2006). A defendant seeking removal based on alleged fraudulent joinder to defeat diversity has the "heavy" burden of proving that, after the court resolves all issues of law and fact in the plaintiff's favor, there is no possibility the plaintiff can establish a cause of action against a diversity-defeating defendant in a state court. *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992); *Brooks v. Merck & Co.*, 443 F. Supp. 2d 994, 998 (S.D. Ill. 2006); *Bavone v. Eli Lilly & Co.*, Civil No. 06-153-GPM, 2006 WL 1096280, at *2 (S.D. Ill. Apr. 25, 2006).

      **B.     Fraudulent Joinder**

      In this case, it appears from the record that an amount in excess of $75,000, exclusive of interest and costs, is in controversy. However, diversity of citizenship is not complete. For diversity purposes, Howmedica is a citizen of New Jersey, as it is a corporation incorporated under the law of New Jersey with its principal place of business in New Jersey. *See* 28 U.S.C. § 1332(c)(1). However, the Court's review of the online corporate records of the Illinois Secretary of State, which

records the Court can judicially notice, *see Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 930 n.2 (S.D. Ill. 2006), discloses that Anderson is a corporation incorporated under the law of Illinois with its principal place of business in Illinois. Thus, Anderson is an Illinois citizen, as is Phillips, so that complete diversity of citizenship does not exist in this case. Howmedica contends that Anderson's Illinois citizenship can be disregarded by the Court because Anderson has been fraudulently joined to defeat diversity. Specifically, Howmedica asserts that Illinois law broadly exempts hospitals from liability under the doctrine of strict products liability in tort. Additionally, Howmedica contends that because Anderson furnished medical services to Phillips, rather than distributing a product, Anderson cannot be liable to Phillips in strict products liability. The Court considers each of these contentions in turn.

Turning first to the matter of whether Illinois law exempts hospitals from claims in strict products liability, the Court is unaware of any such broad-based exemption for hospitals from products liability claims under Illinois law. *See Kirk v. Michael Reese Hosp. & Med. Ctr.*, 513 N.E.2d 387, 394-96 (Ill. 1987) (in a strict liability action arising from an automobile accident, holding that a hospital could not be held liable in strict products liability for prescribing certain medications to the driver responsible for the accident where the driver had consumed alcoholic beverages before the accident and had received adequate warnings about the dangerous propensities of the drugs from his physician); *Cunningham v. MacNeal Mem'l Hosp.*, 266 N.E.2d 897, 899-904 (Ill. 1970) (holding that a hospital could be held liable in strict products liability for distributing hepatitis-infected blood to patients). In *Suvada v. White Motor Co.*, 210 N.E.2d 182 (Ill. 1965), the Supreme Court of Illinois adopted the doctrine of strict products liability. The *Suvada* case was a suit by passengers on a bus who were injured when a truck collided

with the bus, apparently as a result of the failure of the truck's brakes, against the manufacturer of the allegedly defective brakes. *Id*. at 183. In imposing liability on the manufacturer of the brakes notwithstanding the lack of privity of contract between the plaintiffs and the manufacturer, the court held that

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
> (a) the seller is engaged in the business of selling such a product, and
> (b) it is expected to reach the user or consumer in the condition in which it is sold.
> (2) The rule stated in subsection (1) applies although
> (a) the seller has exercised all possible care in the preparation and sale of his product, and
> (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

*Id*. at 187 (quoting Restatement (Second) of Torts § 402A (1965)). In so holding, the court analogized from the traditional policy justifications underlying the imposition of strict liability in cases involving food:

> Arguments advanced to support the imposition of strict liability in food cases have been: (1) The public interest in human life and health demands all the protection the law can give against the sale of unwholesome food. (2) The manufacturer solicits and invites the use of his product by packaging advertising or otherwise, representing to the public that it is safe and suitable for use. Having thus induced use of the product, the law will impose liability for the damage it causes. (3) The losses caused by unwholesome food should be borne by those who have created the risk and reaped the profit by placing the product in the stream of commerce.

*Id*. at 186 (citations omitted). The court concluded that "[w]ithout extended discussion, it seems obvious that public interest in human life and health, the invitations and solicitations to purchase the product and the justice of imposing the loss on the one creating the risk and reaping the profit are present and as compelling in cases involving motor vehicles and other products, where the defective condition makes them unreasonably dangerous to the user, as they are in food cases." *Id*.

The reasoning of *Suvada* tracks closely, of course, the social policy underlying the strict liability doctrine as enunciated in the Restatement (Second) of Torts:

> On whatever theory, the justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products.

Restatement (Second) of Torts § 402A cmt. c. *See also Dugan v. Sears, Roebuck & Co.*, 454 N.E.2d 64, 66 (Ill. App. Ct. 1983); *Boddie v. Litton Unit Handling Sys., Div. of Litton Sys., Inc.*, 455 N.E.2d 142, 147-48 (Ill. App. Ct. 1983); *Winkler v. Hyster Co.*, 369 N.E.2d 606, 610 (Ill. App. Ct. 1977). Thus, the major purpose of strict liability is to place the loss caused by a defective product on those who create the risk and reap the profit by placing such a product in the stream of commerce. *See Trans States Airlines v. Pratt & Whitney Canada, Inc.*, 682 N.E.2d 45, 53 (Ill. 1997); *Carollo v. Al Warren Oil Co.*, 820 N.E.2d 994, 1001 (Ill. App. Ct. 2004); *Domine v. Fulton Iron Works*, 395 N.E.2d 19, 23 (Ill. App. Ct. 1979); *Evans v. Control Prods. Corp.*, 392 N.E.2d 239, 242 (Ill. App. Ct. 1979). Accordingly, in a products liability action, all persons in the chain of distribution of a defective product, including suppliers, distributors, wholesalers, and retailers, are liable for injuries resulting from the product. *See Hammond v. North Am. Asbestos Corp.*, 454 N.E.2d 210, 216 (Ill. 1983); *Thomas v. Kaiser Agric. Chems.*, 407 N.E.2d 32, 36 (Ill. 1980); *Logan v. West Coast Cycle Supply Co.*, 553 N.E.2d 1139, 1142 (Ill. App. Ct. 1990); *Sims v. Teepak, Inc.*, 493 N.E.2d 721, 723 (Ill. App. Ct. 1986).

The major limitation on the strict products liability doctrine in Illinois of which the Court is aware is, of course, 735 ILCS 5/2-621, the so-called "seller's exception" to products liability under Illinois law. *Yount v. Shashek*, 472 F. Supp. 2d 1055, 1065 (S.D. Ill. 2006); *Cherry v. Siemans Med. Sys., Inc.*, 565 N.E.2d 215, 218 (Ill. App. Ct. 1990). The statute provides generally that, in a products liability action, a non-manufacturing defendant who has not contributed to an alleged defect in a product is entitled automatically to dismissal upon proof of the identity of the manufacturer of the product:

> Product liability actions. (a) In any product liability action based in whole or in part on the doctrine of strict liability in tort commenced or maintained against a defendant or defendants other than the manufacturer, that party shall upon answering or otherwise pleading file an affidavit certifying the correct identity of the manufacturer of the product allegedly causing injury, death or damage. The commencement of a product liability action based in whole or in part on the doctrine of strict liability in tort claim against such defendant or defendants shall toll the applicable statute of limitation and statute of repose relative to the defendant or defendants for purposes of asserting a strict liability in tort cause of action.
> (b) Once the plaintiff has filed a complaint against the manufacturer or manufacturers, and the manufacturer or manufacturers have or are required to have answered or otherwise pleaded, the court shall order the dismissal of a strict liability in tort claim against the certifying defendant or defendants, provided the certifying defendant or defendants are not within the categories set forth in subsection (c) of this Section. Due diligence shall be exercised by the certifying defendant or defendants in providing the plaintiff with the correct identity of the manufacturer or manufacturers, and due diligence shall be exercised by the plaintiff in filing an action and obtaining jurisdiction over the manufacturer or manufacturers.
>
> * * * *
>
> (c) A court shall not enter a dismissal order relative to any certifying defendant or defendants other than the manufacturer even though full compliance with subsection (a) of this Section has been made where the plaintiff can show one or more of the following:
> (1) That the defendant has exercised some significant control over the design or manufacture of the product, or has provided instructions or warnings to the manufacturer relative to the alleged defect in the product which caused the injury, death or damage; or
> (2) That the defendant had actual knowledge of the defect in the product which

caused the injury, death or damage; or
(3) That the defendant created the defect in the product which caused the injury, death or damage.

735 ILCS 5/2-621(a)-(c).[1] *See also Keast v. Tenneco Equip. Corp.*, No. 95 C 50347, 1996 WL 607002, at *1 (N.D. Ill. Oct. 21, 1996) (explaining that the purpose of Section 2-621 is to allow defendants whose sole basis for liability in a products liability action is their role as members of the chain of distribution of an allegedly defective product to extract themselves from the action at an early stage, before they incur the expense of fully litigating the dispute).

The Court has held previously that 735 ILCS 5/2-621 constitutes state substantive law and therefore is applicable in federal cases in which state law furnishes the rule of decision. *See LaRoe v. Cassens & Sons, Inc.*, 472 F. Supp. 2d 1041, 1046-47 (S.D. Ill. 2006). However, the Court has held also that the statute is not an appropriate basis upon which to find fraudulent joinder as to non-manufacturing defendants, in light of the statute's provisions that, following dismissal of non-manufacturing defendants upon proof of the identity of the manufacturer of a defective product, such defendants may be reinstated under the following circumstances:

> The plaintiff may at any time subsequent to the dismissal move to vacate the order of dismissal and reinstate the certifying defendant or defendants, provided plaintiff can show one or more of the following:
> (1) That the applicable period of statute of limitation or statute of repose bars the assertion of a strict liability in tort cause of action against the manufacturer or

---

3. The Illinois Civil Justice Reform Amendments of 1995 amended 735 ILCS 5/2-621, but were held unconstitutional in their entirety by the Illinois Supreme Court. *See Best v. Taylor Mach. Works*, 689 N.E.2d 1057, 1103-04 (Ill. 1997). Generally, when a statute is declared invalid by the Illinois Supreme Court, it is null and void as of the date of its enactment; it confers no rights, imposes no duties, and affords no protection, and it is, in legal contemplation, as inoperative as though it had never been passed. *See In re G.O.*, 727 N.E.2d 1003, 1007 (Ill. 2000); *People v. Manuel*, 446 N.E.2d 240, 241-42 (Ill. 1983); *Hurst v. Capital Cities Media, Inc.*, 754 N.E.2d 429, 438 (Ill. App. Ct. 2001). Therefore, the version of Section 2-621 that was in effect before the 1995 amendments to the statute applies to this case.

> manufacturers of the product allegedly causing the injury, death or damage; or
> (2) That the identity of the manufacturer given to the plaintiff by the certifying defendant or defendants was incorrect. Once the correct identity of the manufacturer has been given by the certifying defendant or defendants the court shall again dismiss the certifying defendant or defendants; or
> (3) That the manufacturer no longer exists, cannot be subject to the jurisdiction of the courts of this State, or, despite due diligence, the manufacturer is not amenable to service of process; or
> (4) That the manufacturer is unable to satisfy any judgment as determined by the court; or
> (5) That the court determines that the manufacturer would be unable to satisfy a reasonable settlement or other agreement with plaintiff.

735 ILCS 5/2-621(b). Under the statute, a non-manufacturing defendant dismissed from an action pursuant to the seller's exception to products liability "remains functionally a party, susceptible of reinstatement at any time before judgment." *LaRoe*, 472 F. Supp. 2d at 1053. Thus, because dismissal under Section 2-621 "is merely provisional, and non-manufacturer defendants dismissed under the statute remain subject to reinstatement as parties" later in an action, such defendants "continue to be phantom parties to the litigation," therefore defeating complete diversity of citizenship. *Id*. at 1050, 1053 (holding that Section 2-621 was not a proper basis upon which to find that non-manufacturing defendants had been fraudulently joined to defeat diversity, where, even if dismissed under the statute, the non-diverse defendants remained subject to reinstatement as parties) (collecting cases). *See also Mills v. Martin & Bayley, Inc*., Civil No. 05-888-GPM, 2007 WL 2789431, at *5 n.1 (S.D. Ill. Sept. 21, 2007) ("[B]ecause a dismissal of a non-manufacturing defendant under [Section 2-621] is merely provisional, it is not an appropriate basis upon which to find fraudulent joinder."). In sum, the Court declines to hold that Anderson has been fraudulently joined as an innocent seller in the chain of distribution of an allegedly defective product.

Finally, the Court turns to the issue of whether Anderson should be deemed to have been

fraudulently joined on the grounds that it was furnishing medical services to Phillips, rather than distributing a product, and therefore cannot be liable to Phillips in strict products liability. Contrary to what Howmedica argues, Illinois has never adopted a mechanical rule that cases involving medical care automatically are cases involving services rather than products. In *Cunningham* the Illinois Supreme Court specifically stated, in holding that a hospital's provision of hepatitis-tainted blood to patients was actionable in products liability, "whether or not [a] defendant is engaged in the business of selling [a product] as envisaged by *Suvada* and section 402A of the Restatement (Second) of Torts, cannot be answered in the abstract, devoid of evidentiary basis." 266 N.E.2d at 899. The court said also that strict liability "applies to any manufacturer of such a product, to any wholesale or retail dealer or distributor, and to the operator of a restaurant. It is not necessary that the seller be engaged solely in the business of selling such products. Thus the rule applies to the owner of a motion picture theatre who sells popcorn or ice cream, either for consumption on the premises or in packages to be taken home." *Id*. at 901 (quoting Restatement (Second) of Torts § 402A cmt. f). The Illinois courts generally have defined a "product" for strict liability purposes on a case-by-case basis, emphasizing that the determination is to be made in light of the policies underlying the strict liability doctrine, rather than through, for example, dictionary definitions. *See Board of Educ. of City of Chicago v. A, C and S, Inc.*, 546 N.E.2d 580, 591 (Ill. 1989); *Heller v. Cadral Corp.*, 406 N.E.2d 88, 89 (Ill. App. Ct. 1980); *Lowrie v. City of Evanston*, 365 N.E.2d 923, 928 (Ill. App. Ct. 1977). The policy issues to be considered in imposing strict liability include: (1) the public interest in human life and health, *see Suvada*, 210 N.E.2d at 186; (2) the invitations and solicitations of the manufacturer to purchase the product, *see id*.; (3) the justice of imposing the loss on the manufacturer who created the risk and reaped the

profit by placing the product in the stream of commerce, *see id.*; and (4) the superior ability of the commercial enterprise to distribute the risk of injury proximately caused by the defective condition of its product by passing the loss on to the public as a cost of doing business. *See Trent v. Brasch Mfg. Co.*, 477 N.E.2d 1312, 1315 (Ill. App. Ct. 1985) (citing *Boddie*, 455 N.E.2d at 147). In *Immergluck v. Ridgeview House, Inc.*, 368 N.E.2d 803 (Ill. App. Ct. 1977), the court recognized an additional policy consideration, specifically, the disparity in position and bargaining power which forces the consumer to depend entirely on the manufacturer, and the difficulty of requiring the injured party to trace back along the channel of trade to the source of production in the search for the origin of the defect in order to prove negligence. *See id.* at 804 (citing *LaRossa v. Scientific Design Co.*, 402 F.2d 937, 942 (3d Cir. 1968)). Whether an allegedly defective product is in the stream of commerce is also a relevant consideration. *See id.* (citing *Genaust v. Illinois Power Co.*, 343 N.E.2d 465, 470 (Ill. 1976)). *See also Firkin v. U.S. Polychemical Corp.*, 835 F. Supp. 1048, 1051 (N.D. Ill. 1993) (citing *Trent*, 477 N.E.2d at 1315) (under Illinois law, policy considerations to be weighed in determining what is a product for strict liability purposes include: "1) the public interest in life and health; 2) the invitations and solicitations of the manufacturer to purchase the product; 3) the justice of imposing the loss on the manufacturer who created the risk and reaped the profit; 4) the superior ability of the commercial enterprise to distribute the risk of injury as a cost of doing business; 5) the disparity in position and bargaining power that forces the consumer to depend entirely on the manufacturer; 6) the difficulty in requiring the injured party to trace back along the channel of trade to the source of the defect in order to prove negligence; and 7) whether the product is in the stream of commerce.").

It seems clear to the Court that the issue of whether Anderson, in implanting the allegedly

defective hip replacement in Phillips's body, was distributing a product for purposes of strict liability under Illinois law presents questions of both fact and law that it is beyond the Court's power to resolve in determining whether Anderson has been fraudulently joined to defeat diversity jurisdiction. With respect to issues of fact, the Court observed recently that "[t]o determine whether a non-diverse defendant has been fraudulently joined, the Court has a limited power to resolve issues of fact. Specifically, . . . [i]n a few cases, in which a plaintiff has stated a claim but has misstated or omitted discrete facts, the district court may . . . pierce the pleadings and conduct a summary inquiry . . . as to the issue of fraudulent joinder." *Asperger v. Shop Vac Corp.*, Civil No. 07-772-GPM, 2007 WL 4268779, at *5 (S.D. Ill. Nov. 26, 2007) (quoting *Hill v. Olin Corp.*, No. 07-CV-0054-DRH, 2007 WL 1431865, at *4 (S.D. Ill. May 14, 2007)). "However, . . . piercing the pleadings is . . . a strictly circumscribed inquiry limited to uncontroverted summary evidence which establishes unmistakably that a diversity-defeating defendant cannot possibly be liable to a plaintiff under applicable state law.'" *Id*. (quoting *Hill*, 2007 WL 1431865, at *6). With respect to disputed questions of state law, the Court is required to resolve such questions in favor of state court. "[I]f 'intricate analysis of state law' is needed to dismiss [a] claim, the claim may not be disregarded for purposes of diversity jurisdiction." *Riddle v. Merck & Co.*, Civil No. 06-172-GPM, 2006 WL 1064070, at *6 (S.D. Ill. Apr. 21, 2006) (quoting *Polson v. Cottrell, Inc.*, No. 04-CV-822-DRH, 2005 WL 1168365, at *1 (S.D. Ill. May 17, 2005)). *See also McNichols v. Johnson & Johnson*, 461 F. Supp. 2d 736, 742 (S.D. Ill. 2006) ("I]n evaluating fraudulent joinder the Court is required to construe issues of state law in the light most favorable to [the plaintiff]."). Similarly, to the extent that relevant state law presents novel or ambiguous issues, and the Court believes that it does in this instance, such issues are to be reserved for the jurisdiction of

the state court. *See Smith v. Merck & Co.*, 472 F. Supp. 2d 1096, 1100-01 (S.D. Ill. 2007) (in a suit involving personal injuries caused by a prescription medication in which a diversity-defeating pharmacist was alleged to have been fraudulently joined, holding that the issue of whether a sale of such medication is a sale of goods for purposes of a claim for breach of warranty under the Illinois Uniform Commercial Code is an ambiguous question of state law that must be resolved in favor of remand); *Rutherford v. Merck & Co.*, 428 F. Supp. 2d 842, 850 n.1 (S.D. Ill. 2006) (quoting *Dodson v. Spiliada Mar. Corp.*, 951 F.2d 40, 42 (5th Cir. 1992)) ("In evaluating fraudulent joinder claims, we must . . . resolve all . . . ambiguities in the controlling state law in favor of the non-removing party."). In view of these settled principles, the issue of whether Anderson was distributing a product for purposes of strict liability under Illinois law is not one the Court can resolve in evaluating fraudulent joinder.

The Court notes that a broad exemption for hospitals from claims in strict products liability might well be an excellent idea; on the other hand, the benefits of such a rule might be outweighed by countervailing considerations like the policy in favor of ensuring compensation for persons injured by a defective product regardless of negligence that underlies the strict products liability doctrine. It is important to bear in mind that "such power as federal courts possess to interpret and apply state law is, at best, a negative power or, perhaps more properly, a badge of weakness, arising as it does from the fact that such courts lack constitutional authority to create a broad body of common law." *In re General Motors Corp. Dex-Cool Prods. Liab. Litig.*, 241 F.R.D. 305, 321 (S.D. Ill. 2007) (citing *In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1300 (7th Cir. 1995)). "Respect for state courts as the primary expositors of state law counsels restraint by federal court in announcing new state law principles." *Gust K. Newberg Constr. Co. v. E.H. Crump & Co.*, 818

F.2d 1363, 1368 (7th Cir. 1987). *See also Willis v. Bell*, 669 F. Supp. 229, 233 (N.D. Ill. 1987) ("[F]ederal courts are not the authorized expositors of state law; there is no mechanism by which their errors in such matters can be corrected on appeal by state courts."). Correspondingly, "federal court is not the place to press innovative theories of state law," *Anderson v. Marathon Petroleum Co.*, 801 F.2d 936, 942 (7th Cir. 1986), and "[i]t is not [the] province [of] a federal . . . court to fashion for [Illinois] what we are certain many would say was a wise and progressive social policy." *In re General Motors Corp. Dex-Cool Prods. Liab. Litig.*, 241 F.R.D. at 322 n.8 (quoting *Loucks v. Star City Glass Co.*, 551 F.2d 745, 746 (7th Cir. 1977)). Finally, "a claim of fraudulent joinder to defeat diversity is an exceptionally poor place to assert novel theories of state law, in light of the requirement that, in evaluating . . . fraudulent joinder, a court must construe both law and fact against removal and in favor of remand[.]" *Hill*, 2007 WL 1431865, at *4 (citing *Bova*, 446 F. Supp. 2d at 934 n.3). Resolution of the issues presented by Howmedica's claim of fraudulent joinder would take the Court well beyond the scope of a proper jurisdictional inquiry. Therefore, those interesting questions will have to be decided in state court.

### III. CONCLUSION

Pursuant to 28 U.S.C. § 1447(c), this action is **REMANDED** to the Circuit Court of the Third Judicial Circuit, Madison County, Illinois, for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

DATED: 12/17/07

s/ *G. Patrick Murphy*
G. Patrick Murphy
United States District Judge